IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARIA E. DELACRUZ, | ) | CV. NO.  05-00571 DAE BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TRIPLER ARMY MEDICAL, | ) | |
| PETER GEREN, Acting Secretary of | ) | |
| the Army. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

On July 23, 2007, the Court heard Defendants' Motion.  Elbridge W.

Smith, Esq., appeared at the hearing on behalf of Plaintiff; R. Michael Burke,

Assistant U.S. Attorney, and Brian Bentley, Special Assistant United States

Attorney, appeared at the hearing on behalf of Defendants.  After reviewing the

motion and the supporting and opposing memoranda, the Court GRANTS

Defendants' Motion.

<u>BACKGROUND</u>

Plaintiff is a Filipino woman who began working for the Army in

1997 at the Forensic Toxicology Drug Testing Laboratory (the "Lab") at Tripler

Army Medical Center.  By May 2002, Plaintiff held a supervisory position as a

Supervisory Forensic Toxicology Technician.  Plaintiff supervised ten to fifteen forensic toxicology technicians on the night shift.  Plaintiff's immediate supervisor was Alberta Okamoto, a Japanese woman.

As a supervisor, Plaintiff was responsible for processing urine specimens for drug testing, monitoring work production of the staff, and ensuring that the chain of custody documentation was properly completed pursuant to the Lab's standard operating procedures.  Plaintiff was verbally counseled by Ms. Okamoto on several occasions and received a written warning about her mistakes, poor performance, and failure to follow proper procedures for absences.  Plaintiff alleges that she was unaware that Ms. Okamoto considered some of their conversations to be verbal counselings, as Plaintiff believed they were merely having work conversations.  Plaintiff admits to making some of the mistakes for which she was counseled, but claims that it was due to inadvertence.  For example, Plaintiff made errors in following the proper procedures for the chain of custody, and failed to catch labeling errors made by her subordinates.  Following chain of custody procedures and proper labeling are important because the results from the urine drug testing are used in court proceedings.

In January 2002, Ms. Okamoto told Plaintiff not to speak "Filipino" (Tagalog) inside the Lab with other Filipinos.  Defendants allege that Ms. Okamoto

2

only told Plaintiff not to give directions to other employees in Filipino.  Ms.

Okamoto testified that subordinate employees Edward Vess, Penny Carter, and

Aurora Courtney, had complained to her about Plaintiff giving instructions and

directions to other employees in Tagalog and that it made them uncomfortable

since they did not understand what was going on.  (Defs.' Ex. 1 at 39-40.)  Plaintiff

alleges that LT COL Bruins had said that speaking Tagalog to transmit instructions

enhanced efficiency.  Plaintiff further states that she did not give instructions in

Tagalog to English-only speakers.

In March 2002, while Plaintiff was out of the Lab, Plaintiff's personal

items and office supplies were removed from her work table and placed on a

different table, and the computer she had been using was allegedly reassigned to

another employee.  Plaintiff also complains that a file cabinet that she used was

moved to the other side of the Lab.  Defendant asserts that there was an increase in

the number of employees at that time and thus, Plaintiff was to share her work area

with her supervisor, Ms. Okamoto.  Ms. Okamoto claims that Plaintiff's personal

belongings were in a locked filing cabinet as she had left them and Ms. Okamoto

simply moved the cabinet to an area closer to the office that they would share.

On March 21, 2002, Plaintiff made a request for Family Medical

Leave Act leave, which was granted.  During her absence, Ms. Okamoto allowed

other employees to rotate into the supervisor position.  On April, 16, 2002, Plaintiff

contacted an Equal Employment Opportunity ("EEO") counselor and filed a formal

EEO complaint on May 22, 2002, alleging race, color, national origin, sex and

handicap discrimination.[1]

        In the spring of 2002, Plaintiff's psychologist opined that she should

be reassigned out of the Lab.  Based upon this request, Plaintiff was detailed to the

department at the urinalysis collection site at Schofield Barracks.  Plaintiff

remained at Schofield Barracks from approximately August 2002 to August 2003.

        On March 24 and May 27, 2003, Plaintiff was absent without leave.

On June 9, 2003, Ms. Okamoto extended an administrate leave control over

Plaintiff.  The leave control was originally put into place in 2002 and required

Plaintiff to submit doctors' notes for her absences.  The leave control was put into

place and later extended since Plaintiff did not have any leave available due to

having taken extended periods of leave and having failed to reduce the number of

absences.  Specifically, Plaintiff had taken more than 307 hours of annual leave,

---

[1]This Court grants Plaintiff's request to strike Brian E. Bentley's declaration
with respect to all issues of which he has no personal knowledge and for
documents of which he is not the custodian of records.  However, this Court admits
into evidence Defendants' exhibits 1-24 based on the declaration of Kenrock K.S.
Higa, who is the EEO Officer for Fort Shafter and the custodian of Defendants'
EEO files on Plaintiff.

325 hours of sick leave, and 900 hours of leave without pay in 2001.  Indeed,

Plaintiff admitted that she did not have enough leave and that she owed sick leave

since she had taken advanced sick leave.

Plaintiff requested annual leave from MAJ Lyons, which was denied

on June 12, 2003.  Four days later, on June 16, 2003, MAJ Lyons granted

Plaintiff's same leave request.  On July 14, 2003, Plaintiff received a letter that she

was expected to return to work at the Lab effective August 3, 2003.  The last day

that Plaintiff worked at the Lab was December  9, 2002; she had been out of the

Lab for more than 180 days.  While Plaintiff was out of the Lab, the Lab

underwent major changes.  Because Plaintiff had been out of the Lab for a long

period and based upon her previous mistakes, she was required to be recertified to

return to work back at the Lab.  Plaintiff was given several months to get herself

recertified.   Plaintiff did not do so and Plaintiff did not return to the Lab.  Instead,

Plaintiff was placed on leave without pay until she submitted her disability

retirement application in January 2004.

On September 5, 2003, Plaintiff filed a second EEO complaint and

identified the following ailments: a herniated disk, De Quervain's syndrome, carpel

tunnel syndrome, tenosynovitis, panic disorder and depression.  As noted above, on

January 23, 2004, Plaintiff applied for disability retirement.  On January 30, 2004,

5

Ms. Okamoto issued a proposed demotion to Medical Support Assistant based upon Plaintiff's decertification as a Forensic Toxicology Technician.  On May 4, 2004, Plaintiff's request for disability retirement was approved and her retirement became effective on May 13, 2004.  On May 21, 2004, Plaintiff was informed that the proposed demotion was now moot.  On July 8, 2004, Plaintiff filed a third EEO complaint again alleging mental and physical disabilities.

Plaintiff filed her Complaint in this lawsuit on September 2, 2005, alleging discrimination and hostile work environment claims.  Defendants filed a motion for summary judgment on April 4, 2007.  Plaintiff filed an opposition on July 9, 2007, and Defendants filed a reply brief on July 16, 2007.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

<u>DISCUSSION</u>

Plaintiff has brought disparate treatment and hostile work environment claims based upon her race and national origin.[2]  Plaintiff has also brought a claim for violation of the Rehabilitation Act based on her alleged mental ailments of depression and panic disorder and her physical ailments of a herniated disk by her neck, carpal tunnel syndrome, De Quervain's syndrome, a rotator cuff injury to her shoulder, and high blood pressure.  Defendants seek summary judgment on all of the claims.

I.      <u>Disparate Treatment Claims</u>

Pursuant to Title VII, a plaintiff must produce either through direct evidence or through the burden shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, evidence that creates an inference of unlawful discrimination.

---

[2]  Plaintiff alleged reprisal in the factual section of her Complaint.  She based her reprisal claim on being detailed to a different position in a different health facility at Schofield Barracks on or about August 8, 2002, several months after her April, 16, 2002 EEO complaint.  (Compl. ¶ 10.)  However, Plaintiff did not list retaliation as a cause of action in her Complaint and she did not address this claim in her opposition to Defendants' motion for summary judgment.  As such, she has waived any opposition to summary judgment on any purported retaliation claim. <u>Jenkins v. County of Riverside</u>, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment.").

Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003).  Direct

evidence is "evidence which, if believed, proves the fact [of discriminatory

animus] without inference or presumption."  Godwin v. Hunt Wesson, Inc., 150

F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in

original).  Plaintiff has asserted that being told not to speak "Filipino" in the Lab is

direct evidence of discriminatory intent.  Plaintiff, however, has not linked this

remark to any employment action.  See Vasquez, 349 F.3d at 640 (requiring the

plaintiff to show a nexus between the discriminatory remarks and subsequent

employment decisions).   Accordingly, Plaintiff must proceed under the

McDonnell Douglas framework.

Under the McDonnell Douglas framework, in order to proceed, the

plaintiff must first establish a prima facie case that:  (1) she belongs to a protected

class; (2) she was performing her job according to the employer's expectations; (3)

she was subjected to an adverse employment action; and (4) similarly situated

individuals outside her protected class were treated more favorably.  Chuang v.

Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000); Godwin,

150 F.3d at 1220.[3]

---

[3]If the plaintiff meets this burden,
        the burden of production, but not persuasion, then shifts
                                                (continued...)

10

Adverse actions include "a wide array of disadvantageous changes in

the workplace . . . ." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000);

Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004);

Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 869 (9th Cir. 1996).

"Title VII does not limit its reach only to acts that take the form of cognizable

employment actions such as discharge, transfer, or demotion." Lyons v. England,

307 F.3d 1092, 1118 (9th Cir. 2002) (quotation marks and citation omitted).  An

adverse employment action is one that "causes a material employment

disadvantage, such as a tangible change in duties, working conditions or pay."

Hutchinson v. Seagate Tech., LLC, No. C 02-05763, 2004 WL 1753391, at *8

(N.D. Cal. Aug. 3, 2004) (citation omitted).  Indeed, actions such as transferring

job duties, issuing undeserved performance ratings, or actions that negatively affect

the employee's compensation are adverse employment actions.  Fonseca, 374 F.3d

---

[3](...continued)
> to the employer to articulate some legitimate,
> nondiscriminatory reason for the challenged action.  If
> the employer does so, the plaintiff must show that the
> articulated reason is pretextual either directly by
> persuading the court that a discriminatory reason more
> likely motivated the employer or indirectly by showing
> that the employer's proffered explanation is unworthy of
> credence.

Chuang, 225 F.3d at 1123-24 (internal quotation marks and citation omitted).

11

at 847; <u>Yartzoff v. Thomas</u>, 809 F.2d 13741, 1376 (9th Cir. 1987).  Further, actions

such as being excluded from meetings, seminars, and positions that would have

made the employee eligible for salary increases, and being given a more

burdensome work schedule, are sufficient to establish adverse employment actions.

<u>Strother</u>, 79 F.3d at 869.  However, not every employment decision amounts to an

adverse employment action.  <u>Ray</u>, 217 F.3d at 1240.

Here, Plaintiff bases her claims on the following actions:   Ms.

Okamoto told her not to speak "Filipino" in the Lab in January 2002; Ms. Okamoto

addressed her in an accusatory tone once during a meeting in her office in March

2002; her personal belongings were moved from her work area table and placed on

a table where urine samples were kept, the filing cabinet she used was moved to

the other side of the Lab away from the table she had been using, and the computer

she was using was reassigned to another employee in March 2002; Ms. Okamoto

rotated other employees into Plaintiff's position during Plaintiff's absence without

discussing the matter with Plaintiff; she received verbal and written couselings; the

withdrawal of her assignment at Schofield Barracks; and she was decertified and

therefore, Ms. Okamoto proposed a demotion on January 30, 3004.

None of these actions, however, constitute adverse employment

actions as Plaintiff has presented no evidence that any such actions had a negative

impact on her compensation, hours, status, or other terms of employment.  See

Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1997) (holding that

transfer with no reduction in compensation did not constitute an adverse

employment action).  Indeed, although undeserved performance ratings can

constitute an adverse employment action, a mediocre performance rating that does

not give rise to any further negative employment action does not constitute an

adverse employment action.  Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1112-13

(9th Cir. 2000); Hutchinson, 2004 WL 1753391 at *9 (mere criticism of

performance, without more, does not rise to the level of an adverse employment

action).

          In Kortan, the court found that an undeserved rating on an official

evaluation was not an adverse employment action since it was not disseminated,

and it was not accompanied by a change in work load or assignments, reduction of

salary, denial of a raise, suspension, or termination.  Id. at 1113.  Similarly in

Lyons, 307 F.3d at 1118, the Ninth Circuit found that the employer's mediocre

performance evaluations of the plaintiff were not adverse employment actions

since the plaintiff had not alleged that the evaluations were published, or that they

caused the plaintiff to be relieved of responsibilities or saddled with burdensome

tasks.  See Rivera v. England, 360 F. Supp. 2d 1104, 1121 (D. Haw. 2005) (a

13

negative evaluation that does not remain in the employee's personnel file is not an adverse employment action); see also Kortan, 217 F.3d at 1112-13.

Here, Plaintiff has not even alleged that any of the verbal or written counselings changed her work load, reduced her salary, relieved her duties or otherwise changed the terms and conditions of her employment.  Likewise, being addressed in an accusatory tone, having her belongings moved, and having her subordinates informed of her position duties have had no effect on her terms of employment.  Furthermore, Plaintiff admitted to making the mistakes that led to several of the verbal or written counselings, chalking it up to inadvertence.  Moreover, Plaintiff stated that she did not believe she was being verbally counseled and thought that she was merely having a work conversation with Ms. Okamoto.

With respect to the decertification which led to the proposed demotion, the proposed demotion never came to fruition because Plaintiff requested disability retirement the week before the demotion was proposed and thus, the proposed demotion was moot.  Accordingly, it cannot constitute an adverse action, as no such action was actually taken.  King v. Mineta, 6 Fed. Appx. 616, 618 (9th Cir. 2001) (noting that a request that the plaintiff be removed from his position was not an adverse employment action since it was not sufficiently

14

final) (citing Brooks, 229 F.3d at 929-30 (holding that a negative performance review that had been appealed by the plaintiff and was subject to modification by the employer was not "sufficiently final" to be an adverse employment action)).

Finally, Plaintiff alleges that withdrawal of her assignment at Schofield Barracks constitutes an adverse action. Again, however, Defendants stated that she had to report back to her same position at the Lab. Plaintiff has not shown that her duties, responsibilities or pay would have changed had she reported back to the Lab. Indeed, had she recertified herself, she would have gone back to her same duties and pay. Nonetheless, even if Plaintiff could show that this was an adverse action, Plaintiff has not set forth any evidence that similarly situated employees outside of her class were treated better than her.[4] Indeed, Plaintiff does not even refer to a similarly situated employee in her opposition. See Vasquez, 349 F.3d at 640 (the employee with whom the plaintiff tries to compare himself must have been involved in the same type of offense); See Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999) (to be similarly situated, an employee must

---

[4]Likewise, even if Plaintiff is claiming that being placed on administrative leave control was an adverse action, she has not shown that such controls impacted the terms and conditions of her employment. Moreover, Plaintiff has not even discussed any other non-Filipino employee that was treated more favorably.

have the same supervisor, be subject to the same standards, and have engaged in the same conduct).

Accordingly, Plaintiff cannot prove a prima facie case of discrimination.  Therefore, her disparate treatment claims are dismissed.

II.     Hostile Work Environment Claims

For Plaintiff to prevail on a hostile work environment claim, she must show that (1) she was subjected to verbal or physical conduct of a harassing nature because of her race or national origin (2) that this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and created an abusive working environment.  Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  The working environment must be both objectively and subjectively offensive.  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

In determining if an environment is objectively hostile, the court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. at 787-88 (quotation marks and citation omitted).  A demanding standard is required "to ensure that Title VII does

16

not become a 'general civility code.'" Id. at 788.  Proper application of the standard will filter out complaints based upon the ordinary trials and tribulations of the workplace.  Id.

Here, Plaintiff's claims fail.  First, only the incident that relates to her race or national origin is being told not to speak "Filipino."  Plaintiff has not alleged that any of the other complained of actions were taken because she is Filipino.  Indeed, Plaintiff's list of grievances do not include the "racial comments or ridicule that are hallmarks of hostile work environment claims."  Trujillo v. Univ. of Colorado Health Sciences Ctr., 157 F.3d 1211, 1214 (10th Cir. 1998). "Plaintiff was not subjected to anything that was physically threatening or humiliating, nor was [s]he subjected to any offensive utterances."  Id.

Further, being told once not to speak Filipino in the Lab during her approximately seven years of employment clearly is not severe or pervasive. Likewise, none of the other events alleged by Plaintiff are severe or pervasive. Indeed, Plaintiff's allegations are not nearly as severe or pervasive as incidents alleged by other plaintiffs, which courts have determined did not constitute a hostile work environment.  See Vasquez, 349 F.3d at 643-44 (finding no hostile environment existed where the plaintiff was told that he should consider transferring to work in the field because "Hispanics do good in the field," was told

17

that he had "a typical Hispanic macho attitude," a co-worker made continual, false complaints about the plaintiff to his supervisor, and plaintiff was yelled at in front of others); <u>Mendoza v. Sysco Food Servs. of Ariz., Inc</u>., 337 F. Supp. 2d 1172, 1188, 1190 (D. Ariz. 2004) (holding that no hostile work environment existed despite at least four alleged instances of discrimination based on the plaintiff's Mexican national origin occurring within period of five months involving stereotypical remarks made after employee killed rat, a cartoon depicting rats having sex with deceased rat, supervisor's comments regarding Mexican employees' unreliability, and co-worker's complaints about Mexican music station); <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1031, 1037 (9th Cir. 1990) (Ninth Circuit affirmed finding that plaintiffs failed to prove a hostile work environment where the employer allegedly made racially offensive slurs, kept illegal personnel files on the plaintiffs because they were Latinos, provided unsafe vehicles to Latino police officers, posted a racially offensive cartoon, targeted Latinos when enforcing rules, and did not provide adequate back up to Latino police officers).

      Accordingly, Plaintiff's hostile work environment claims fail.

III.   <u>Disability Claims</u>

Plaintiff claims that she was discriminated against and not provided a reasonable accommodation based upon her alleged disability.  Defendants argue that Plaintiff cannot prove she is disabled pursuant to the Rehabilitation Act.

Courts use the standards of the Americans with Disabilities Act ("ADA") to determine if there has been a violation of the Rehabilitation Act.  The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 28 C.F.R. § 36.104.

"Major life activities" include, but are not limited to, "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  28 C.F.R. § 36.104.  Here, Plaintiff alleges that she suffers from depression and panic disorder, a herniated disk by her neck, carpal tunnel syndrome, De Quervain's syndrome, a rotator cuff injury to her shoulder, and high blood pressure.  Even if these conditions were impairments, Plaintiff has not identified a major life activity that is impacted by these impairments.

To the extent Plaintiff is claiming that she is substantially limited in the major life activity of working, Plaintiff's claim fails.   To be considered substantially limited in the major life activity of working, a person must be precluded from performing "'either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'"   29 C.F.R. § 1630.2(j)(3)(i); see Sutton v. United Airlines, Inc., 527 U.S. 471, 492 (1999) (to be substantially limited in the major life activity of working, "one must be precluded from more than one type of job, a specialized job, or a particular job of choice.").   Plaintiff presented no evidence that she is precluded from performing a class of jobs or a broad range of jobs.   Indeed, Plaintiff's physician opined that she can perform comparable duties of her former position at a place other than the Lab.

To the extent Plaintiff contends that she is limited in performing manual tasks, Plaintiff has not explained in her opposition how she is so limited. Plaintiff has not informed this Court what tasks she can and cannot perform. Furthermore, as indicated by her physician's letter referred to above, it appears she can perform the manual tasks required of her former position.

Accordingly, Plaintiff cannot establish that she is disabled as defined by the ADA.   Therefore, her disability claims are dismissed.

20

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 24, 2007.



_____
David Alan Ezra
United States District Judge

<u>Delacruz v. Tripler Army Medical Center</u>, CV No. 05-00571 DAE-BMK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT